RYAN W. POWERS (California State Bar No. 291784)
5807 Fayette Street
Los Angeles, California 90042
Telephone: (323) 487-0383
Fax: (323) 487-0384
Email: ryan@ryanpowerslaw.com

Attorney for Plaintiff
JOHN GIOELI

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHN GIOELI**<br><br>Plaintiff,<br><br>vs.<br><br>**SEGA OF AMERICA, INC.**<br><br>Defendant. | **Case No:** '24CV2276 BAS MMP<br><br>**COMPLAINT FOR:**<br><br>1. **DECLARATORY RELIEF**<br>2. **BREACH OF CONTRACT**<br>3. **ACCOUNTING**<br>4. **UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

1

Plaintiff John Gioeli, an individual, by and through counsel, complain and allege on information and belief as follows:

## NATURE OF THE ACTION AND RELIEF SOUGHT

1. This is a civil action seeking a declaratory judgment, damages for breach of contract, an accounting, and restitute for unjust enrichment arising from the Defendant's improper assertion of their sole ownership over the sound recording and musical composition "Live and Learn," and subsequent exclusive exploitation thereof.

2. Plaintiff has performed and maintained his songwriting registration for "Live and Learn" for over twenty years since he wrote and recorded the song which was initially included on the Defendant's video game "Sonic Adventure 2."

3. Unbeknownst to Plaintiff, Defendant has exploited and licensed "Live and Learn" to at least 25 video games, television shows, live performances/events, and films.

4. Defendant asserts that they own "Live and Learn" based off of a 2001 lyric agreement where Plaintiff was paid $3000 to write lyrics for a as-yet-untitled song that would be included in Sonic Adventure 2.

5. Plaintiff ended up arranging, producing, recording, and performing vocals on "Live and Learn," which was produced out of his home studio in California using his own equipment without the supervision, control, or involvement of the Defendant.

6. Defendant's assertion that they somehow own 100% of both the master recording and musical composition is without basis. There is no agreement

1  purporting to transfer the master recording rights to Defendant, the Plaintiff was at
2  no relevant time an employee of Defendant, and the Defendant was not the author
3  of the master recording as they were not even present for the creation of the sound
4  recording by the Plaintiff.

5      7.    Defendant has acknowledged in prior correspondence that the
6  composition is likely jointly owned, as a musician (who is presumably an employee
7  of Defendant) did write instrumental melodies and arrangements for "Live and
8  Learn." However, the only portion of the composition for which a transfer
9  agreement exists is expressly limited to the lyrics themselves and does not extend to
10 the musical melodies, arrangement, or other elements of the composition.

11     8.    Plaintiff seeks the Court's decision to determine the ownership of the
12 copyrights of "Live and Learn," and further, for an accounting and restitution for
13 any monies collected by Defendant for which Plaintiff is entitled.

14     9.    Further, Plaintiff seeks damages for Defendant's breach of the 2001
15 Lyric Agreement for utilizing Plaintiff's services outside the scope of the original
16 agreement and sub-licensing the services across at least two dozen separate titles
17 including licenses to third-party Nintendo.

**PARTIES**

20     10.    Plaintiff John Gioeli a/k/a Johnny Gioeli, is an individual and musician
21 residing in East Lym, Connecticut.

22     11.    Defendant SEGA OF AMERICA, INC. is a California Corporation
23 with its principal place of business in Irvine, California. Defendant SEGA of

AMERICA, INC. is the parent company and successor in interest to SEGA OF AMERICA DREAMCAST, INC. which, upon information and belief, was merged back into the Defendant SEGA of AMERICA, INC.

## JURISDICTION AND VENUE

12. This action arises under the copyright laws of the United States, 17 U.S.C. §§ 101, *et seq.*, and the laws of the State of California.

13. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338 and the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court also has subject matter jurisdiction over Plaintiffs' state law claim pursuant to the principles of pendent jurisdiction. A copyright registration for the musical composition "Live and Learn" (Registration Number PA0002462680) has been filed under Johnny Gioeli's name. An application for the copyright registration for the sound recording was filed by Johnny Gioeli under case 1-14536337811 with the Copyright Office prior to filing this claim.

14. Subject matter jurisdiction is appropriate to this Court under 28 U.S.C. § 1332(a) because there is complete diversity between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000. Plaintiffs primary residence is in East Lyme, CT. Defendant is incorporated in Delaware and with their principal place of business in California.

15. This Court has personal jurisdiction over Defendant because Defendant intentionally caused harm to Plaintiff in California, Defendant has a principal place of business in California, and Defendant conducts regular business in California.

4

16. Venue for this action is proper under 28 U.S.C. §1391(b)(2).

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

17. Plaintiff and a former subsidiary of Defendant, SEGA OF AMERICA DREAMCAST, INC. (which we are informed and believe has been merged into Defendant entity) entered into a service agreement dated February 1, 2001 (the "Lyric Agreement") whereby Plaintiff was to contribute some lyrics to an as yet untitled song for a video game called "Sonic Adventure 2" (the "Game").

18. The "Services" as defined in the Lyric Agreement were to "create lyrics for the purpose of the Game."

19. The scope of the Lyric Agreement was limited to the Sonic Adventure 2 Game, its promotional material, and its [sic] "sequent byproducts."

20. The Lyric Agreement provided that SEGA OF AMERICA DREAMCAST, INC. shall have the rights in the "Services" for the purposes of the Lyric Agreement, namely, the Game.

21. Nowhere in the Lyric Agreement did it mention any additional songwriting, recording, producing, or vocal services in connection with the song or the Game.

22. The Lyric Agreement did not mention any master recordings or recordings of any kind, and was expressly limited in scope to lyrics.

23. However, as the Plaintiff began to work with Defendant, Plaintiff's role and services began to expand beyond the scope of the original agreement.

24. Instead of merely using lyrics provided by the Plaintiff, Defendant, via its employee Jun Senoue, sent demos of instrumental portions of the song to Plaintiff to listen to and review.

25. The initial demo was not the final arrangement or structure of "Live and Learn." To create " Live and Learn," Plaintiff came up with a revised song structure and arrangement and would instruct Jun Senoue via telephone to remove certain parts, add parts, and re-record certain parts and segments.

26. Jun Senoue would re-record certain portions in Japan under Plaintiff's instruction and send back these portions to Plaintiff. Plaintiff would incorporate these revised sections into his ProTools session at his studio.

27. Plaintiff, at his home studio in Rancho Cucamongo, California, using the equipment owned and/or leased by him (including a Neumann U87 microphone, UA Audio preamp and 1176 compressor, and protools system) recorded and performed his own vocal performance over the instrumental version that he had carefully produced and arranged.

28. Plaintiff further produced the master recording using a ProTools system which allowed for the combination and arrangement of various portions of the instrumentals provided by Defendant with the vocal performances by the Plaintiff.

29. Plaintiff controlled and oversaw the recording process, produced the recording, directed the arrangement and of the song, directed the recording process for other musicians, and recorded and performed the vocals. The only interaction

with Defendant during this process related to the creation of the sound recording was Plaintiff's correspondence with Jun Senoue.

30. Jun Senoue re-recorded portions under Plaintiff's direction in Japan, while the Plaintiff worked without any supervision, direction, or control by Defendant in California. For example, Plaintiff instructed Mr. Senoue to re-record, cut certain portions, add other portions, and modify other sections of performances.

31. The results of this production were the fixation of the sound recording of "Live and Learn" to the hard drive medium in Plaintiff's ProTools computer workstation. This fixed sound recording was then transmitted to the Defendant for inclusion in the Sonic Adventure 2 video game.

32. Defendant was not directly involved in the creation of the master recording itself, and did not exert any creative control and supervision over the recording process.

33. The master recording is credited solely to Crush 40, a performance moniker used by Johnny Gioeli. Crush 40, led by the Plaintiff, has toured and performed this song live over the past 23 years.  The Plaintiff has maintained and registered the musical composition for the song via performing rights organization BMI as co-written between himself and Jun Senoue

34. Johnny Gioeli registered the copyright in the composition under registration number PA0002462680. .

35.  Without a direct claim for authorship of the master, no control or direct involvement in the process  of creating the final master recording, and no

7

clear written transfer of the master recording, Defendant has no basis to claim sole ownership of the copyright in this sound recording.

36. Without Defendant's control, supervision, or involvement in the final arrangement and songwriting of "Live and Learn", and with the Lyric Agreement specifically limited to the lyrics written for "Live and Learn," Defendant does not have the basis for sole ownership of the musical composition.

37. Plaintiff has openly claimed ownership of the sound recording and musical composition for over 20 years and has been credited as such.

38. Plaintiff was only aware of Defendant's use of the song in the Song Adventure 2 video game, for which he was aware and had consented to its use.

39. In 2024, Plaintiff was made aware by a fan of Crush 40 that "Live and Learn" is also present in a number of other well-known video game titles published by Defendant and other third parties such as Nintendo. Our initial research has shown "Live and Learn" (master recording and composition) appears in at least the following 25 titles (video games unless specified otherwise):

1. Yakuza 4
2. The Yakuza Remastered Collection
3. Sonic Adventure 2 (2012 re-release)
4. Sonic Adventure 2: Battle
5. Sonic X (78-episode TV Series) - Original Japanese Release
6. Super Smash Bros. for Nintendo 3DS
7. maimai (series)
8. Fist of the North Star LEGENDS ReVIVE
9. Sonic Adventure 2
10. Sonic Generations (Console/PC)
11. Joysound
12. Yakuza 5
13. Phantasy Star Online Episode I & II

8

14. Phantasy Star Online Episode I & II Plus
15. Super Smash Bros. Brawl
16. Sonic Runners
17. Sonic Frontiers
18. Super Smash Bros. for Wii U
19. Super Smash Bros. Ultimate
20. Sonic Generations (3DS)
21. Sonic Mega Collection
22. Sonic at the Olympic Games - Tokyo 2020
23. Phantasy Star Online 2
24. Capcom Monster Hunter Rise
25. Sonic X Shadow Generations

40. Unless the Plaintiff were to actively view/play all of the above titles (many of which are only available on specific consoles and/or in specific regions) he would not be aware of these uses and knowledge of such could not be imputed on him.

41. Of particular note is that this song was licensed to third party Nintendo and used in some of its best-selling titles of all time (per Nintendo's own website, Super Smash Bros. Ultimate has sold 35.14 million units worldwide). At an MSRP $59.99 per unit, that is over $2 billion in sales.

42. Plaintiff has worked with the Defendant on other titles and created and written other compositions and produced other sound recordings for the Defendant over the past 20 years.

43. In every other instance, the Defendant and the Plaintiff have entered into specific agreements that address the rights in the respective musical compositions and/or master recordings. Here, there was not agreement regarding the license or assignment of the Plaintiff's master recording, the

9

production/recording of "Live and Learn," or the additional songwriting and arrangement done by the Plaintiff.

44. In correspondence with the Defendant regarding licensing "Live and Learn" for a SEGA Symphony, the Attorney for Defendant, Attiya Riasat, has acknowledged that SEGA does not own any rights in "Live and Learn," stating "Please note that these are your materials prior to this agreement, and not Sega's and we have no rights to these materials."

45. Defendant' current counsel, Mr. Richard Lehv, repeatedly asserted to the Plaintiff in a letter dated April 11, 2024, that "Live and Learn" is a joint work between the Defendant and the Plaintiff, and that the Plaintiff is entitled to 50% of SEGA's profits from the joint work stating "Moreover, because the Song [Live and Learn] is a "joint work," in the absence of the Agreement any monetary claim would be limited to a claim for accounting of 50% of the profits SEGA earned from SEGA's use and licensing of the Song."

46. However, Defendant has refused to account to Plaintiff or admit that Plaintiff at the very least is an owner / joint owner of the copyrights in and to the master recording and/or musical composition.

47. As such, Defendant is forced to rely on the Court to conclusively establish the ownership rights in and to the copyrights at issue and permit the owners to enforce their rights in and to such copyrights, including the right to accounting and profits for co-owners, or potentially the right to pursue infringers.

## COUNT I – DECLARATORY RELIEF

(28 U.S.C. § 2201, *et seq.* and 17 U.S.C. § 101, *et seq.*)

48. Plaintiffs incorporate by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

49. There is a real and actual controversy between Plaintiff and Defendant regarding whether the master recording for "Live and Learn" was authored solely by Plaintiff and owned solely by Plaintiff, co-authored by Plaintiff and Defendant, or somehow owned solely by the Defendant as they allege (even in the absence of any written assignment or authorship on behalf of the Defendant).

50. There is a real and actual controversy between Plaintiff and Defendant regarding whether the musical composition embodied in the master recording for "Live and Learn" was co-authored by Plaintiff and Defendant, or owned solely by Defendant pursuant to the written Lyric Agreement between the parties.

51. Defendant's continuing conduct of asserting sole ownership over the master recording and musical composition interferes with Plaintiff's ability to perform, license and otherwise exploit the master recording of "Live and Learn", and partake in Plaintiff's share of any revenues/profits generated from the copyright. If allowed to continue, Defendant's conduct could continue to cause financial damage to the Plaintiff by denying him of his share in the proceeds from his owner or jointly-owned copyrights. For example, Plaintiff must be able to pursue master licensing fees from third parties (such as Nintendo) for which Defendant has already entered into such licenses. The controversy between Plaintiff

11

and Defendant is thus real and substantial and demands specific relief through a decree of a conclusive character.

52. Plaintiff is entitled to declaratory judgment that Plaintiff is the author or co-author and owner of the master recording and musical composition "Live and Learn" including injunctive relief to enjoin Defendant from making assertions of sole ownership, granting exclusive licenses without Plaintiff's approval, and failing to account to Plaintiff.

## COUNT II – BREACH OF CONTRACT

(California Common Law)

53. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in the preceding paragraphs, as though fully set forth herein.

54. Plaintiff, on the one hand, and Defendant, on the other hand, entered into the Lyric Agreement dated February 1, 2001.

55. Plaintiff was to contribute lyrics for a song to be incorporated into Defendant's video game Sonic Adventure 2.

56. Defendant, in breach of the terms of this Agreement, utilized and licensed Plaintiff's contributions to at least 25 separate properties, games, films, and TV shows, a clear breach of the scope of the original agreement, without the approval or compensation to Plaintiff.

57. As a proximate cause of Defendants' breach, Plaintiffs have been damaged in an amount to be determined at trial, but no less than $500,000, which is exclusive of prejudgment interest.

## COUNT III - ACCOUNTING

### (California Common Law)

58. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in the preceding paragraphs, as though fully set forth herein.

59. Plaintiff has established that he is at the very least, a co-owner in the copyrights of the master recording and/or musical composition of the "Live and Learn" song.

60. Co-owners of copyright must account to other owners for any profits or revenues generated from the copyrights.

61. Defendant has not accounted or paid to Plaintiff any share of profits, license fees, royalties, or any income generated from the Plaintiff's copyrights and/or share of copyrights in the master recording and/or musical composition for "Live and Learn."

62. Based on the foregoing, the Court should order Defendant to account to Plaintiff for the profits generated from the master recording and/or musical composition for "Live and Learn."

## COUNT IV - UNJUST ENRICHMENT

### (California Common Law)

63. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in the preceding paragraphs, as though fully set forth herein.

64. As a result of Defendant's acts, as set forth in this Complaint, that have deprived Plaintiff of his monies, the Defendant has been unjustly enriched. Defendant has not paid to Plaintiff any share of profits, license fees, royalties, or

any income generated from the Plaintiff's copyrights and/or share of copyrights in the master recording and/or musical composition for "Live and Learn."

65. Plaintiff was the primary and controlling author of the master recording, and its sole author. Even if Defendant's contributions could constitute authorship, Plaintiff would still be a joint author of the master recording. As such, Plaintiff is entitled to an accounting and share of profits generated. Defendant has not remitted any accountings or profits to Plaintiff. As a result, Plaintiffs request restitution of all monies improperly obtained by Defendants, and interest thereon.

66. Based on the foregoing, it would be against equity and good conscience to allow Defendant to retain the profits received and withheld from Plaintiffs without compensating Plaintiff.

67. Plaintiffs are entitled to restitution in an amount to be determined at trial, but no less than $500,000, which is exclusive of prejudgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for Judgment as follows:

**On The First Cause Of Action For Declaratory Relief:**

    A. For a declaration that Plaintiff is the owner of the master recording "Live and Learn"

    B. For a declaration that Plaintiff is the co-owner of the musical composition "Live and Learn"

    C. For an order enjoining Defendant, and their agents, attorneys, and assigns, from asserting a exclusive copyright claims against Plaintiff,

its publisher, its agents, and/or any of its licensees in connection with "Live and Learn";

**On the Second Count for Breach of Contract:**

    D.    For damages according to proof;

    E.    For costs of suit incurred herein, including reasonable attorneys' fees; and

    F.    For such other and further relief as the Court deems just and proper.

**On the Third Count for Accounting:**

    G.    For an accounting of all profits and revenues generated by the "Live and Learn"

**On The Third Cause Of Action For Unjust Enrichment:**

    H.    For an award of restitution in an amount according to proof at trial.

**On All Claims For Relief:**

    I.    For prejudgment interest at the legal rate;

    J.    Costs of suit; and

    K.    For such other and further relief as the Court deems just and proper.

DATED: December 5, 2024            **RYAN W. POWERS, ESQ.**

By   /Ryan W. Powers/

Ryan W. Powers

**RYAN W. POWERS ESQ**
Ryan W. Powers (SBN 291784)
5807 Fayette Street
Los Angeles, CA 90042
Telephone:  (323) 487-0383
Email:         ryan@ryanpowerslaw.com

16

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury.

DATED: December 5, 2024        **RYAN W. POWERS, ESQ.**

By  /Ryan W. Powers/
Ryan W. Powers

**RYAN W. POWERS ESQ**
Ryan W. Powers (SBN 291784)
5807 Fayette Street
Los Angeles, CA 90042
Telephone:  (323) 487-0383
Email:       ryan@ryanpowerslaw.com